Case number 244086, Enri, East Palestine Trail Derailment. Arguments not to exceed 15 minutes per side. Mr. Herzig, you may proceed for the appellant. Good afternoon, Mr. Herzig. You've reserved three minutes for rebuttal. Yes, your honor. You may proceed. May it please the court. This case is about the level of oversight a district court has to apply when the allocation of attorney's fees is at issue in a class action settlement in order to ensure fairness and reasonableness. Here, the district court used a trust but don't verify process, allowing appellees unfettered discretion. Appellees are obviously self-interested in the attorney's fees award here, and let them decide which attorneys get what. That process does not comply with Rule 23. So the trust part of this comes up first when you're finalizing the settlement and you're deciding who's going to control the allocation of the fees. The verifiers are at the back end. So maybe your argument's strongest on that the class counsel misapplied the formula. But as to your arguments about you being excluded from class counsel or the quick pay, didn't the judge do the trust part? Didn't she put those in place with everyone in the courtroom, including your clients, multiple times having opportunities to object to those things, and they didn't? So I might be a little more with you on the last issue about whether the formula is actually applied correctly. But in terms of setting up the structure, you and your clients were there for all of that. Not you, maybe you. I'm sorry, your clients. I don't know if you were there, Mr. Herzig. But at least your clients were there, Morgan and Morgan. Right, yes, my clients were there. I think those things go together here, Your Honor. What the court says is, she said that there was a non-public telephonic status conference where all of this was decided. No, that was at the very end, right? Yes. Quick pay had been in place for a long time. The counsel who was leading this had been in place for a long time at that point. Well, and my clients were one of those counsel. Our client was a co-lead counsel all the way up until the final  To break it up a little, I find it a little rich. I agree with the sentiment in your brief that the quick pay troubles me in the sense that attorneys are getting paid and the people who are harmed are not. That's really troubling. But it's a little rich for your client to complain because he filed an affidavit in support of the settlement that included the quick pay provision. So it's like, I'll take the quick pay if it comes to me in the amount I want. But otherwise, I'm going to object to it. That seems, that's a little rich, isn't it? Well, I don't think that's actually what happened here, Your Honor. I agree that the quick pay was, it was. Well, let me ask you just specific questions. Did he support the settlement? Did he file an affidavit in support? Yes. He did, Your Honor. And the language was in it, right? It was. OK. I don't disagree with any of that. I think what you have here, though, I think you need to look at these things together. Quick pay, in this particular instance, exacerbates the problem of no oversight by the trial court. The trial court delegated all of its authority to class counsel who are interested. I wholeheartedly agree with you on that. But my problem is, is that it's hard for your client to make this argument. As they point out in their brief, he supported it. He waived his right to contest it. Let's talk about the timeline a little bit. I think that answers that question. On September 23, 2024, co-lead class counsel, the appellees only, file a reply brief. In that reply brief. That's after the quick pay. Quick pay has been in effect since April. Understood. Again, I would argue that these two things work together to cause the problem. And I would argue that we get remand on even if you were. Well, let's say we disagree with you on that. Talk about the allocation, because now you're getting to the side. The way I've parsed it, because I'm not as smart as all of you, is I parse it. I say quick pay comes first, then allocation, and then what Judge Radler is talking about, the final objection. So you're getting to allocation. I understand what you did in your reply brief. You wound quick pay back into that. But go ahead with the allocation. I've heard you're pretty smart, Judge. Yes. In terms of allocation, there is no oversight here. We think the Fifth Circuit has the better rule. We would encourage this court to follow in re high sulfur, where the court very clearly said, of course, the district court has to keep oversight over the allocation of attorney's fees. That didn't happen here. This court gave away all of its discretion. It says, you accuse me of not retaining my authority, when I've delegated that authority, which certainly is an exercise of it. I don't know an instance where courts get to give away all of their power to interested parties. That's very troubling. But let's stop here, too, because this is the hardest issue in the case for me. So this signature thing is driving me bonkers. So you've got your client participating in every brief leading up to this. And now he says, I didn't sign this. But he did go to the hearing, right? It was two days later. It's a seven page order. I know they stuck the line in the fee award. But it's a seven page draft. Why doesn't he have an obligation at that point? He gets the ECF notice. My law clerk says it's the new version of I didn't do my homework. Like, the dog ate my homework. I mean, he got the notice. Why not? I mean, didn't he have an obligation to look at it? He sat quietly. The attorney discussed, look, class counsel is going to do the allocation. Katz says it at the hearing. And there had been the objection to the outlay. The principal objections to the settlement were by other counsel objecting to the opaqueness, opacity of the allocation. Your Honor, I would say the principal objection there was really to questions about whether the other attorneys that had individual clients like my clients were going to give up their individual contingent fee awards, which was really important to this case. But I think a lot of Judge Hermendorfer's point, that's what Abraham, I think it's Abraham, says at the hearing is he says, I don't understand how the allocation is going to work. So I can't advise my client on that, right? Isn't that what he says, almost point blank? Your Honor, yes. And if my clients had been included as they were supposed to as part of this process, my clients are similarly situated to those other lawyers and would have been able to help oversee that process and help ensure the transparency that we think should be required here. We're looking for three things, transparency, neutrality, and reasonable oversight. But why didn't he have an obligation to read the document with his name on it, even if he had not approved it? Did he call someone and say, didn't he have an obligation to say, look, to the judge, I didn't sign off on this? That's what the hearing's about. One thing this court is often concerned about is sandbagging and replies. That's essentially what happens here. On September 23, if I can go through the timeline briefly, I think it is important. On September 23, co-lead class counsel files a reply brief. They do not flag in that reply brief what changes they are making to the proposed revised order. They don't redline it. They don't talk about it at all. They slip in this critically important thing that says, oh, by the way, we're going to have unfettered control over who gets what. I might be a little more sympathetic to the dog eating my homework. Lawyers get a lot of notifications. I get that. But at the hearing, class counsel says, in open court, your client's there, follow the well-established principle that we, as appointed class counsel, which doesn't include your client, are best suited to apportion fees to those firms who perform work that benefit the class and allow us to continue this litigation in that role. So this exact issue comes up in the oral. I can maybe set aside overlooking the paper for some of the reasons you mentioned. But in oral argument or discussion of the fairness hearing, this specific point is addressed, and your clients don't object or say anything. A couple of things. First of all, the way these orders are written, my client was part of co-lead or co-leadership throughout this process until the very end. It was never part of the class counsel. Right. But it was always part of the co-lead. And they actually often define it as a class counsel. The paper says class counsel. This is class counsel. It does. And for my client to miss in. Your client's really sophisticated. I mean, you have a really sophisticated client. For my client sitting there to miss the difference between co-lead and co-lead class counsel in the middle of a hearing over this, I think, is a lot. Well, he missed the paper. Now he's missed the paper and the oral argument. I mean, it's just. Well, sure. Part of this is about how plaintiff's lawyers are all. So is this the response is that he just missed both of those and that's OK? I think. I don't like the idea that after the document had been fabricated. By the way, if someone fabricated my name on something, I would object very quickly to it. And it didn't happen here. But I'm done. Is there anything else? I disagree with that, Judge Radler, in the sense that the first thing that happened. Well, we had the paper. He was on the paper and was in the oral argument. So I'm going to just, from there. What isn't in the record is that you have class counsel all working together all the time, especially to try to avoid duplication of work to ensure that they're being as efficient as possible. So you do build up trust. And you do expect somebody else. I say, even after, then the allocations were happening. He was initially, for the first few weeks, was not a part of that committee that was making the allocation. So that's like further notice that you're not a part of the team. You were part of this one team. But you're not part of this team. My client didn't know that was happening until someone asked him by an email for wiring instructions so that he could get the money that other people had. Doesn't quick pay happen? Doesn't quick pay happen within 14 days? It could happen within 14 days. In your case, this is more than 14 days. Yes, Your Honor. At the time of, it was unclear whether the payments had been made. But my client doesn't get notice. You're a very sophisticated client. Sure, but he still had, again, in a system where you are trusting your other counsel to work together with you, and where you have been in the decision-making process this whole time, you expect to be still a part of that process. And when the first thing. You trust but verify. Well, yes. Well, and that's, again, and that's where the court comes in. It's really the court's job here. I would say that even if you have concerns about some of these things we've talked about in terms of what my client may have missed or not, what you have here, and I think is worth remanding under all circumstances, is a situation where a judge has given unfettered discretion to self-interested parties to divide up money. That matters a lot. What the judge didn't do right here, she let, it seems to me, the quick pay kick in before there was an opportunity to object to the allocation. In other words, a lot of times, I was reading a lot of these cases, and a lot of times what happens is they set up the allocation. The allocation is approved by the court with an opportunity to object, and then it's quick pay. What happened here is everything was compressed. That would be a good rule for this court to make as well, is that you don't send out any of the money until a neutral, in a transparent way, has overseen the process. What we have here is none of that. And I think you remand under all circumstances to make sure that happens. Because affirmance is a rule in a very high profile case with a lot of money at stake that judges should continue to simply let a class counsel that is self-interested have unfettered discretion over who gets what money. That will undermine the policy purposes of Rule 23, because my clients and lawyers like them who represent individual plaintiffs will not join a class action if there is no oversight, if we're going to run into these issues all the time. It creates massive headaches, and I think undermines the purposes of Rule 23. So even with what you might see as vehicle problems in this case, I think remand is appropriate and necessary, because you can't live with the rule that this case creates. We could remand on one issue. We don't have to remand on every issue, right? Yes, Your Honor. I'm at my time. Hold on a minute. Any further questions? OK, thank you, Mr. Herzog. Thank you. Thank you, Your Honors. May it please the Court, Paul Clement for the appellees. Your Honors, with respect, there's nothing to remand here. There's nothing the district court did here that was unusual or an abuse of discretion, which is ultimately the standard. Mr. Clement, I look at this, and maybe you can give me some comfort. So I have one brief from you, very compelling, not in this particular case, saying plaintiffs haven't been paid yet. Let's move on with things. And I'm not going to give you an answer. And I have another case where it just looks bad for the legal profession. Like, we're quickly paying the attorneys, and yet the very people who are harmed haven't even been paid. And Judge Kepledge and I talked about this in the Pampers case, where is when the interests get disaligned. And it seems to me troubling here that the plaintiffs haven't been paid, but the attorneys are getting paid so quick that no one's even reviewing the allocation. Like, I couldn't even find the allocation and how it was done. I saw the complaints about math, but it seems to me she didn't even rule on their oral objection about the allocation problem. Well, OK, there's a lot in that. Yeah, there is. And just to kind of contextualize here, this case is light years away from Pampers, which, as you know better than anybody, was a coupon case where the class was getting nothing. The class, nobody here has an objection to the total amount of the attorney's fees or to the total amount the class is getting. And then, just to try to unpack this piece by piece, this is actually the rare case where there were extraordinary efforts to fashion the relief in a way that some of the plaintiffs, the ones that had personal injuries, not property, it's the property class that is getting held up by the objector. But as you pointed out, they want to move. There's people in that community that want to leave. It's causing health problems for a man. Absolutely. And it's really annoying that all of that's getting delayed by what, if I may wade into the papers in that case, is a frivolous objection. But here's the thing. And this court looked at it in Pelzer. And Brian Fitzpatrick, who is an astute observer of class actions, as anybody I know, looked at this and said, actually, your initial instinct is to be concerned about quick pay. But there's a perfectly legitimate reason for quick pay. And it does align the class interest because quick pay provisions reduce the number of frivolous objections. And that benefits the class. I don't dispute any of that. But the usual way it's set up, I mean, even the cases you didn't cite, but the plaintiff's counsel cited below, talked about there's an allocation, there's an opportunity for objection, and then the quick pay kicks in. Absolutely, look. And you could even have a 50% quick pay. They should get their money back. They should get some level of their fees. But the fact that it just went without anyone approving the allocation, and then Mr. Morgan complains about the allocation, and she never rules on it. So again, in fairness to everybody in this proceeding, and not just Mr. Morgan, but the district court and the 30 other law firms that got their allocations pursuant to this process and never objected, there was time to object. And the district court retained jurisdiction over the objections. Now, the reason that she doesn't specifically or more particularly deal with Morgan's very opaque objection to the allocation is because it's not in, and I think you know this because you've said the objection at the hearing, it's not even in his papers. She's there for a hearing on his motion to clarify. There's nothing in there that's a complaint about. But both sides offered to file supplemental. She said, no, I'll take it under advisement. And surely, having been a district court judge, this happens all the time where things come up. Judge Sutton talks about this in the United States versus Bank case, where all the time these things come up, we treat district courts differently. When they come up, they have an obligation to rule on it. She never rules on it. She does. She basically says, I have enough information here. And she doesn't have a, even at the hearing, she doesn't have a square objection to the allocation amount. And here's what she figures out. By the time she susses out what's really going on with Morgan's entirely opaque objection, she figures out his beef is not that he's not getting enough based on the hourly formula or the multipliers. Because everybody's getting paid based on the hours they worked. And he's getting the same multiplier as the lead class counsel. So he's not getting any less favorable treatment of his hours. It's just about how the hours, different hours, hours don't all count evenly, right? It's not even that. It's just he's disputing the whole idea of getting paid based on an hourly formula. Because he's got the fewest hours. And he's got this theory that, look, I work my magic in different ways than other lawyers. So hours don't capture. Not just that I need another multiplier. It's just that this shouldn't be about hours. And if only I was in the allocation committee, I would have had an ability to assess things in a way that changed the formula. And Isn't that true? Isn't that theoretically true? It's maybe theoretically true. But what she's listening to all this and what she understands is he's basically saying, A, I wanted to be part of that committee. And I wanted to make a process that was going to be less fair and less transparent. And she says and rejects it. And she thinks these things are linked. But she says, no. You had no business being in the allocation process. I specifically and intentionally, we're here in part because not all blueberries are blue. And not all lead counsel are lead class counsel. And this little confusion that he's a lead counsel, but he's not lead class counsel, she was explicit at that hearing and said, I did exactly what I intended. I wanted these people. I know, but she also, throughout the process, interchangeably used those terms. I mean, if you read through her, she mixes it up all the time. But I agree with you. At that point, she knew. But everyone seemed to be mixing these things up. As I read the transcript, I was getting a headache with all the mix-ups. But the point being is, at the end of the day, she never rules specifically. When she issues a written order, it does not deal with the brief he filed, but not the objections he brought up orally. Am I missing something where she, in that written order, deals with that? I think she deals with those absolutely in that written order. But I don't think in here it's. Where in the written order? It's in the various provisions. But she puts in the order that he's got the fewest number of hours, and he's getting the same multiplier. And then, at the end, she disposes of everything she thinks he's presented. And I don't think, even at the hearing, she thinks that he's presented a standalone, I don't like the allocation, I didn't get enough. And indeed, at the hearing, at one point, he says the opposite. He says, I'm not making that complaint yet because I don't feel like I can because I don't have, because I wasn't part of the committee. And so she's dealt with everything she thinks is before her. And she resolves the case. And she resolves the case, I think, absolutely correctly. Which is like, look, at the end of the day, you didn't get as much as you want because you didn't work as many hours as everybody else did. And I mean, this is the thing. I mean, you're a district court judge, so hopefully you'll agree that at a certain point, you've got to give the district court some slack because they've been. Absolutely, but she could do a better job making the record here. I mean, I've seen much better records than this. It's easy for her to include a couple paragraphs saying, this came up in an argument, and here's the answer. The answer you just gave, if that was in the written order, I'd agree with you. Sure, Judge DeParlo, there's a huge difference between you could have done it better in abuse of discretion. And I think the standard of review is to abuse discretion. But it's always abuse not to specifically address an argument. When it's clearly and timely presented. And this one's 0 for 2. I don't know about that. I think it's very 0 for 2. And it should have been in the motion. I mean, again, you've got to, and here's the other thing, and I think. So that's one. What's the other? In other words, they didn't know how much they were getting until the end. 0 for 2, so. It wasn't timely, and it wasn't clear. That was what I meant by 0 for 2. But you're saying it wasn't in the motion. In other words, it came up in some way, maybe opaquely. It came up during the actual hearing, telephonic hearing. As like a sort of, almost like an adjunct to one of the arguments that's actually before her. But at no point is there, like if he comes in and says, gosh darn it, I'm entitled to twice as much. And then she would have ruled on that. And she would have said, I guarantee, she would have said, no you're not, buddy. You worked 100 hours personally, and your firm worked less than the other ones, and you got the benefit of the highest multiplier. I think all that's implicit in her order. It's not explicit because the objection wasn't explicit. And what I meant about the slack and the deference is she's overseen this whole case. And so she knows how the parties have proceeded. And she knows who's been in court every day. She knows who has been actually working for the class resolution of this, which is the dog and not the tail. And she knows. I guess I have a different view of Rule 23 and the obligations it imposes on a district judge in these types of actions. And I think they, I mean in a big action like this, it's really important to a lot of people. It's important the district court dot their I's and cross their T's. And you're right. Abuse of discretion, that's a very fair point. But at the end of the day, when I look at this record, I'm just troubled that that didn't happen. Like there's not the normal process of allocation, time for objection, then the quick pay kicks in. I mean, it's all kind of merged together. And she keeps saying, look, we need to get this done. Do you really want to hold up the settlement? I get that as to the plaintiffs themselves. But what I don't get is why we have to go so fast with the attorneys that no one has it. And your point's a fair one. Look, there's only one person objecting at the end of the day. Maybe that is something. But the way I was used to it being done, the way I've seen district judges do it, is that's the process they go through. And again, I don't think that's the objection that Mr. Morgan raised below. As you yourself indicated, he was perfectly happy to get paid quickly, as long as he got paid exactly what he wanted and he was part of the process. And so he's the only one objected at the end. There were objections made, as Judge Hermendorfer alluded to, during this process. And those were addressed in real time. And that was Abraham and them, who were talking about needing to advise their clients. What about that whole thing with the signature, though? That troubles me whenever. I mean, that's kind of getting into ethics at that point. No, here's the thing. And this is the kind of thing. This was also raised to the district court. The district court has overseen this whole thing. I mean, if you want to know, because I wanted to try to get to the bottom of this. As best as I can tell, this is what happens. And this, I don't think, is infrequent in these class actions. There's a lot of lawyers involved. There's a requirement that certain lawyers' names be on the briefs, or there's a pattern where certain lawyers' names are on the briefs. But there is also a delegation to a briefing committee. And the briefing committee, particularly when you're putting together a reply brief under deadlines, they put together the brief. It doesn't necessarily go to everybody in the process, including people who haven't been that active in the process. And it gets filed. I agree with that. But the four signatures on it, sign it pursuant to Rule 11, you would think they would at least be sent to them. Here are the changes we made. Here's the change we made to the fee order. And he would see it in red line at that point. Judge Tapar, maybe that's the way it should work in practice. But all I can tell you is I don't think there was any deviation from this reply brief to the opening brief to other briefs that had been filed in this case. This was sort of the modus operandi. So the idea that this was some sort of special treatment for this reply brief, just to trick Mr. Morgan, is just a false narrative. And obviously, you wouldn't go through all the trouble to have that whole machination to then, in open court two days later, tell everybody this is exactly what just happened with Mr. Morgan sitting right there. You just wouldn't do it. And I will say, maybe I have a different perspective on this. But in the Justice Department, I had a brief filed every day that had my name on it that I didn't see. And I would have thought, if somebody came to me and said, whoa, there's something problematic in that brief, I would have said, OK, let's get on it, and let's fix it, and let's use all due diligence to do it. So I just don't think the idea that your name's on a brief, I mean, maybe best practices is every lawyer whose name is on every brief you see should. Different question, but Judge Kornbluffer, go ahead. I actually had a question about the Rule 23 overlay onto allocation decisions. At some points in your briefing, I read you to say, so long as the overall fee under the settlement is appropriate and fair, it's actually not district court's role to police the allocation of that fee. What source of law are we looking to determine whether allocation decisions are appropriate? Is it common fund doctrine? Is it Rule 23? That would be helpful. Yeah, well, I mean, I think it is sort of some combination of the two. And I think this circuit has spoken in the Boling case and said that you don't need to really look at anything other than the reasonableness of the overall award to the class. And I think that is current circuit law. And I don't think anything in Rule 23H changes that. And to me, the whole thrust of Rule 23H is consistent with this court's precedent in that, you know. Rule 23H postdates Boling, right? Yes, it does. But it doesn't sort of purport to really sort of fundamentally change what the courts have been doing previously. I don't think any court has viewed it as that kind of watershed thing. In a weird way, if 23H does anything, it makes what the judge did here more reasonable. Because 23H is added at the same time as the provisions for the appointment of lead class counsel. And it says there's essentially, at least I read it in the advisory committee notes, it sort of gives a special role to lead class counsel in the allocation of fees. So if anything, I actually think it supports the reasonableness of this. Do you think there's ever an allocation you could imagine that would actually implicate other elements of Rule 23? Like if the allocation is so out of whack? Yes, is the short answer. But I don't think it's really Rule 23H that addresses that. And I think it's probably the more general reasonableness sort of requirement. But I think what the judge did here, which is not atypical, is a perfectly adequate way to deal with it. The Fifth Circuit, which I know isn't us, says something different, right? In Henry High School.  Yes. They have a very different standard. I think it's different from every other circuit that I've seen. But they basically say, you know, the 12-factor test. You lost me there. But they have a 12-factor test. And they say you have to apply the 12-factor test. But I do think they say, I'm sorry to interrupt you, but I thought they said you carefully scrutinize the allocation. Under reasonableness, judges have an obligation to carefully scrutinize the allocation. Yeah, what they say is we have this 12-factor test. And you have to apply it not only to the reasonableness of the overall award, but to each individual award. Now, that seems like madness to me. But if you're going to have that as the standard, you probably have to have something like the procedure they had here. But what I think is the law of this circuit and most circuits is what the judge did here is fine, which is. Can I ask about it? So I think my impression of the case is a little bit different. I thought it was appropriate for the judge to afford a significant amount of discretion to your clients because they were the ones who are most familiar with this case. I think that's probably fairly typical. And the judge had a fairness hearing. The quick pay had been approved. And she put them in charge. But for that to work, there has to be some ability for back-end review. And I think that, to me, the most powerful argument your friend on the other side has, I think, is that they want the back-end review. And they're not happy with the process. And the district judge should have done more. And I thought they had, and so this is really my real question is, you said that their objection on the back-end was basically that they weren't included, which had already been decided. So I'm probably with you there. I thought, maybe this is actually a question for your friend on the other side when he stands up, but I thought they had other objections to the outlay, to the formula, to the way certain hours were credited. If the argument was just we should have been on the team to fly spec it more, I'm probably with the district court judge in the way she did it. But I thought they had more objections on the back-end that maybe the district judge didn't fully process or consider. So I don't think they have a timely or clear objection to anything else. And I would invite you, I mean, the motion to We both invited them to, so I'm sure they'll address it when they stand up. No, but what I was going to invite you to do is to look at the motion to clarify, which is where it should have been. And it's not there. OK, but at the hearing? But in the midst of the hearing, as part of one of the arguments they're actually making, they sort of vaguely gripe about things. And what she basically said is, she did say, look, had my clients articulate what the methodology was, and then gave them an opportunity after he made it clear on the record, what are your objections to that? And there was nothing specific. It wasn't like, no, the multiplier on four was, you know, like I wanted a different multiplier on this. The way I read it is the objection was the much broader objection. It was all tied together, just like they're trying to tie everything together in their brief here. I'm sure he'll address that. Just to finish point, I think the real objection was to this idea that you really can't do this hourly, because that's not the way Mr. Morgan works. When he's going over the multiplier, and he says he found discrepancies, and he's discussing it, and they offer to brief it, I mean, it seems, to use your standard, clear and timely. She's saying, no, I get it. Like, so she's saying it's clear to me, and she's not saying this is, you should have put it in writing. And so then, doesn't she have an obligation at that point to rule on it? That's the simple question. You may be right about the answer. The answer may be the same at the end. The question is whether at that point she has an obligation to rule on it. I don't think she does, Your Honor. And just on that one in particular, like, my client gets up there and explains that there's no real discrepancy. He's just forgotten that we backed out the document review hours. Your client says the math is wrong. I get it. But my point is, it's like, she never rules. She never rules, because she was never given, like, a clear thing to rule on. And boy, I would, I mean, if you're going to flyspeck the district court judge, can I please flyspeck the objections? I would never make an objection like that. I would say, I got $100,000 less than I should have, and here's why. And, you know, so I'm sorry. I think she did a. That's a fair point, but I agree with you that the objection could have been better. But my point is that she seemed to understand it. She seemed to understand that it was not an independent, standalone objection. And it was part and parcel of, I should have been part of the party earlier, and I don't like this quick pay somehow, even though I would get paid faster, and I'd be perfectly happy with it if I got paid what I wanted. Anything further? I have one brief question. Yep, absolutely. May or may not know the answer to this. My understanding is there's ongoing Rule 60 proceedings with respect to certain aspects of the case below. How does that affect the quick pay and payout of the settlement? If you know, if not, I understand. I mean, I'm not privy to all of it, but I don't think it really affects the quick pay aspect of this. Thank you. Thank you. Your Honors, there's a lot of talk about things being opaque. The opacity here is because all we needed was a spreadsheet. Ask Applees. I thought he had a spreadsheet. No. No, there is nothing. Your Honor, you pointed out, there is nothing about the allocation in the record. So how do you know that? The key is the multipliers, and no one knows what those are. No one to this day knows who got what, except for Coley Class Counsel. The court doesn't know. My clients don't know. We don't know, for instance, what they talk about, oh, there's only one objector. First of all, one objector is enough. Hold on. How does he talk about discrepancies found in the allocation if he doesn't know? It's just the argument of Mr. Katz. Well, he gets an email. Hey, let us wire you the money. You're getting about $7.7 million or whatever it says in the transcript. I know that. And then he does his best, and it even talks about it in the transcript, to reverse engineer the number as best he can. But that's not how our process should work. We should not guess and use reverse engineering to figure out what actually happened. And we're not even talking about a huge burden on the court. So I understand your point. Your point is, to the extent it's not clear, it's not clear because he didn't have the information. Correct. No one does. Coley Class Counsel are the only people that know who got what, to this day. The district court does not know. No one else knows. What we have, remember, this is all, to your point, Judge Lepar, this is all kind of a cut-up process. My client files a motion. He says, I think there are problems here, because out of the blue, I'm finding out what I'm getting paid, and I'm not part of the process. The court doesn't hold a hearing. The court doesn't have full briefing. It says, hey, I'm treating this like a discovery order. You should have called my chambers first, and we should have tried to work this out. If that was his complaint, it wouldn't survive 12B6. There's not going to survive Twombly. If you say, I think I've been harmed, maybe something's happened here, I'm not sure. I realize we're on a different stage, but is there some obligation on your client to at least articulate how they've been harmed, other than they don't like the amount? Only Coley Class Counsel have the information. There is no spreadsheet. This whole case is solved by a court delegating to a neutral authority, hey, let me see a spreadsheet of the allocations. All the lawyers get to look at the spreadsheet. They all get to see what they got versus what others got. If there are objections, you work them out, and then you're done. This isn't a massive new process. And I don't even think high sulfur would require a massive new process. What it does require is getting everyone the information so they know. We're left to guess, did my clients get $100,000 more or $100,000 less? No one has any idea. The opacity comes from the fact that all of this is basically a process of secrecy, including what the court did. The court does not have full briefing, let alone make a decision. It says, this is a discovery problem. You should have called my chambers first and followed my process. Now we're going to have a non-public telephonic status conference with a total of four lawyers. I'm limiting it how many lawyers there are going to be. There are going to be four lawyers, and we're just going to talk about this. And then, by the way, the transfer is going to get restricted for a whole long time before it carries out. Is it right that no other counsel objected? No other counsel objected after. There were a bunch of lawyers who didn't have the spreadsheet. There are a whole lot, yes. And perhaps there are good reasons for that. Perhaps there are not good reasons for that. One of the things the court protects against is collusion among counsel. Perhaps there were objections behind the scenes. We'll never know. We don't, well, there was a whole lot of stuff. A lot of collusion. Everybody except your client was a part of it. Hey, you know, hey, Mr. Abraham, those are interesting objections. Let's see if we can work out something that makes your objection go away. You see that happen all the time. There was plenty of outside-the-record speculation from my friend on the other side. We're all guessing because none of us know what actually happened here. We don't have a spreadsheet. To your question, Judge Hermendorfer, my understanding is that because those appeals are proceeding, a whole lot of money hasn't gotten paid out yet. The administration problem that has happened that's required a new administrator to come in, one can wonder whether if there was more at stake for the lawyers at this point, if that would have happened if they didn't all have their money by now. But people haven't gotten paid because those appeals are still pending. And Professor Fitzpatrick has an affidavit in this case. First of all, I think his literature says there are real problems. The quick pay hasn't solved the problem. I think we have a good example here. But his affidavit in this case does not talk at all about quick pay. He's just talking about the reasonableness of the fee. So I think it's important to clarify that because he's actually in this record and neither he nor Professor Silver say anything about the quick pay. Yeah, but I think Mr. Clement was referring to his note. Yeah, but even his note I don't think says quick pay is always fine. I think he has real problems with it. He's also 20 years old, right? He wants an inalienability rule where if you object, it has to affect the whole settlement, all those things. So I don't think it's fair to say that he thinks it's fine in all circumstances. And we can see that it doesn't work. It doesn't work here.  Are you telling me that Morgan & Morgan never asked for quick pay? I... Oh, there's a case where they did. They never asked for it. Morgan & Morgan has real... Morgan & Morgan has not, this is not on the record, but they haven't taken their money. Their money is still sitting in the escrow. No, I understand that. But they litigate a lot of these. I'm sure the answer is yes. I'm sure the answer has to be yes. I don't know every case they have been in. There may have been quick pay in other places. I'm guessing there also was more oversight in other places. Your argument is not that quick pay is per se unlawful under rule 23 or otherwise. It's that the way quick pay operated here was connected with the allocation and it harmed us. Yes, Judge Herbendorfer. These things acting together cause real problems. You have no oversight. You have no transparency. So we don't know what happened. And then the money's gone before anyone can really object. And in terms of people wondering whether it's timely or not, all of this happens within a 28-day period after the order is issued and the process starts. And they're trying to talk it out before they do have to go to court. I wouldn't blame lawyers for trying to work it out before they raise it with the court. And they raised it timely within the time frame of rules 59 and 60. They squarely deal with it. And just to clarify, too, I will, at 68852 of the record, the court asks, what are you complaining about? Is it the process, your involvement, or the amount? And he says, all of those things, Your Honor. OK. Thank you. Do you have a question? Those are quite vague categories, just to. They are. Again, if we had more information, it would have been easier to be more specific. Any other questions? Thank you, Your Honor. Thank you very much. The case will be submitted. Thank you both for your thoughtful arguments. You all want a break?